BARTCHY ET AL., APPELLEES, *v.* STATE BOARD
OF EDUCATION ET AL., APPELLANTS.

[Cite as *Bartchy v. State Bd. of Edn.*, 120
Ohio St.3d 205, 2008-Ohio-4826.]

(No. 2007–0411—Submitted May 7, 2008—Decided September 30, 2008.)

O'CONNOR, J.

{¶ 1} This case involves an attempt by a group of residents to transfer their property from one school district to another under R.C. 3311.24. The State Board of Education denied the transfer, and the trial court affirmed that order. The court of appeals reversed and ordered that the transfer be approved.

{¶ 2} The appeal presents two distinct issues: (1) whether the residents' pursuit of the transfer under R.C. 3311.24 was foreclosed by R.C. 3311.06 and (2) whether the residents met their burden of proving entitlement to the transfer in light of the applicable standards of review. For the reasons that follow, we hold that the residents' petition was properly pursued under R.C. 3311.24, but that they failed to meet their burden of proof. We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court upholding the denial of the transfer.

I. RELEVANT BACKGROUND

{¶ 3} Appellees, Joann and Richard Bartchy, Donna and Robert Salmon, Marilyn and Bernard Schlake, and Beverly and Wayne Morris ("the residents"),

are the residents and owners of four properties on Windridge Drive in the city of Madeira. The properties were annexed into Madeira in 1996 but remained in the Cincinnati Public School District ("CPSD") after the annexation.

{¶ 4} In March 2000, a previous resident of one of the properties submitted a petition to CPSD pursuant to R.C. 3311.24, requesting that the properties be transferred from CPSD to the Madeira City School District ("MCSD"). The petition complied with R.C. 3311.24(A)'s requirement that it must be "signed by seventy-five per cent of the qualified electors residing within" the portion of the property proposed to be transferred.

{¶ 5} CPSD eventually submitted the petition to the State Board of Education ("the state board") as required by R.C. 3311.24(A). After some procedural delays not relevant here, and after the two school districts involved in the transfer request filed answers to the 17 questions set forth in the applicable version of Ohio Adm.Code 3301–89–02(B), a hearing officer held an evidentiary hearing on March 23, 2005.[1]

{¶ 6} At the hearing, the Ohio Department of Education took no official position on the transfer. MCSD stated that it was not "initiating, soliciting, [or] encouraging this request" and did not participate in the hearing.

{¶ 7} The residents' position, as summarized by the hearing officer, was that "the transfer would provide a stronger sense of community with the City of Madeira. Petitioners contend that keeping City of Madeira residents in the Cincinnati City School District needlessly splits their allegiance to the City of Madeira and saps community spirit."

{¶ 8} CPSD opposed the transfer request. The hearing officer's summary of CPSD's position quoted its attorney's statement that the transfer " 'is not necessary, it's not appropriate, [and] it has absolutely nothing to do with the present and ultimate good of the students involved.' " In the words of the hearing officer, CPSD's position was that "[t]here are no Cincinnati City School District students currently residing in any of the four homes involved, and the petitioners simply want to increase their property values by advertising that they are located in the Madeira City School District."

{¶ 9} The hearing officer recommended that the state board deny the transfer, essentially accepting the arguments of CPSD. In particular, the hearing officer determined that the residents had not introduced evidence of how the proposed transfer would benefit students in the transfer territory and that a transfer would harm CPSD financially, thus potentially harming the students in that district.

---

1. The relevant Administrative Code provisions use both "referee" and "hearing officer" to refer to the person conducting the hearing. See, e.g., Ohio Adm.Code 3301–89–02(F); 3301–89–03(C). We will refer to him as the hearing officer.

The hearing officer concluded that the residents failed to present reliable, substantial, and probative evidence in support of their request.

{¶ 10} The residents filed objections to the hearing officer's report and recommendation, and CPSD filed a response to the objections. On July 15, 2005, the state board accepted the recommendation and denied the transfer.

{¶ 11} Upon the residents' appeal to Franklin County Common Pleas Court under R.C. 119.12, that court first held that the previous annexation of the property into Madeira did not foreclose the state board's consideration under R.C. 3311.24 rather than R.C. 3311.06. The common pleas court then affirmed the state board's denial of the transfer, determining the state board's decision to be supported by reliable, probative, and substantial evidence and in accordance with law.

{¶ 12} The Tenth District Court of Appeals agreed with the common pleas court that the transfer petition was properly considered under R.C. 3311.24. 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 14, 20. However, the court of appeals held that there was no evidence that the transfer would harm CPSD financially and that the residents had met their burden of establishing entitlement to the transfer. Id. at ¶ 52–53. The appellate court reversed the judgment of the common pleas court on the merits and directed the lower court to order the state board to approve the residents' transfer request. Id. at ¶ 54.

{¶ 13} We accepted the discretionary appeals of both CPSD and the state board. CPSD's first proposition asserts that R.C. 3311.06 provides the exclusive method for transferring the property in this case to a different school district, because the property had previously been annexed. Thus, CPSD argues, this petition was improperly filed under R.C. 3311.24, and the state board should not have considered the transfer. The state board did not appeal on this issue and did not brief it.

{¶ 14} If we do not agree with CPSD's first proposition, the second issue we must address is whether the residents in this case met their burden of establishing entitlement to the transfer. Both CPSD and the state board focus their arguments in this regard on Ohio Adm.Code 3301–89–01(F), which provides that "primary consideration" should be given "to the present and ultimate good of the pupils concerned." These arguments also implicate the standards a common pleas court and a court of appeals must apply in reviewing an order of the state board on a transfer request.

## II. The R.C. 3311.06 Issue

{¶ 15} CPSD's first proposition of law asserts that the state board should have rejected the transfer petition outright because it was filed under R.C. 3311.24, which does not allow for a transfer under these circumstances. CPSD argues

that because the property at issue was annexed into Madeira in 1996, the transfer should have been undertaken pursuant to R.C. 3311.06, and because it was not, the state board had no jurisdiction over the matter.[2]

{¶ 16} In resolving this issue, our paramount concern is to determine legislative intent. *State ex rel. Stoll v. Logan Cty. Bd. of Elections,* 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 34. We must consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage. Id. Statutes pertaining to the same subject matter are construed in pari materia. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 28; *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20.

{¶ 17} As relevant here, R.C. 3311.24(A) allows 75 percent of qualified electors residing within a particular area to petition for a transfer of school district territory. The petition is filed with the board of education of the district where the property is located. Once the signatures are verified, the local board must submit the petition to the state board, which then decides whether to hold a hearing. The words "annex" or "annexation" do not appear anywhere in R.C. 3311.24, so CPSD's arguments find no support in that statute.

{¶ 18} R.C. 3311.06 provides procedures for the transfer of property for "school purposes" when the property is annexed for "municipal purposes." The state board, under R.C. 3311.06, has exclusive authority over school-related issues that arise due to an annexation. *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 693 N.E.2d 219, paragraph two of the syllabus. "R.C. 3311.06 provides a mechanism whereby a school district may petition to transfer territory between districts." Id. at 616, 693 N.E.2d 219. When annexed territory comprises a portion (less than all) of a school district, R.C. 3311.06(C)(2) allows for the transfer of school district territory "either upon agreement of the two school districts involved or upon request of a transfer by one of the districts and

2. {¶ a} CPSD did not present an R.C. 3311.06 argument prior to or during the evidentiary hearing conducted by the hearing officer, but first raised the issue in its posthearing brief, and also raised the issue in its response to the residents' objections to the hearing officer's report and recommendation. The hearing officer did not mention the issue in his report and recommendation. The State Board of Education did not mention the issue in its resolution adopting the hearing officer's recommendation.

{¶ b} In rejecting CPSD's argument in this regard, the common pleas court stated: "Review of the two statutes indicates that R.C. 3311.06 pertains to a school district's desire to transfer. See R.C. 3311.06(C)(2). R.C. 3311.24(A) grants the right for Board review when a petition is filed by at least 75% of the residents. Accordingly, jurisdiction is proper under R.C. 3311.24 and [CPSD's] argument is not well taken."

approval of the State Board of Education." Id. at 626, 693 N.E.2d 219 (Moyer, C.J., concurring in part and dissenting in part).

{¶ 19} CPSD urges that R.C. 3311.06 provides the exclusive method of transfer of school district territory in this situation. Because neither one of the school districts involved in the transfer requested it under R.C. 3311.06, CPSD asserts that the state board should not have entertained the transfer petition. CPSD also claims that evidence in the record indicates that the annexation was sought in 1996 "solely to facilitate the transfer to Madeira school district" and maintains that when the school district transfer did not occur at the time of the annexation as anticipated, the residents then resorted to R.C. 3311.24, and that this attempt was improper.

{¶ 20} CPSD's argument specifically relies on R.C. 3311.06(I), which provides, "No transfer of school district territory or division of funds and indebtedness incident thereto, pursuant to the annexation of territory to a city or village shall be completed in any other manner than that prescribed by this section regardless of the date of the commencement of such annexation proceedings, and this section applies to all proceedings for such transfers and divisions of funds and indebtedness pending or commenced on or after October 2, 1959." CPSD argues that the statutory language is specific to the situation, is unambiguous, need not be interpreted, and should be applied as written. CPSD cites no cases specifically construing R.C. 3311.06(I) as relevant here, and our research has found no such cases.[3]

{¶ 21} In holding that R.C. 3311.06 does not provide the exclusive method for the transfer of property that has previously been annexed, the court of appeals stated that "[n]othing in R.C. 3311.06 precludes property owners from petitioning for transfer under R.C. 3311.24. Although R.C. 3311.06(I) states that no transfer 'pursuant to the annexation of territory' may occur except through R.C. 3311.06, the petition for transfer at issue here was not made 'pursuant to the annexation,' but was made independently of it." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 14.

{¶ 22} Our consideration of the issue turns in large part on the meaning of the words "pursuant to the annexation" in R.C. 3311.06(I).

{¶ 23} We determine that R.C. 3311.06(I) is not as specific, straightforward, and unambiguous as CPSD contends. Dictionary definitions of "pursuant to" are

---

3. The text of what is now R.C. 3311.06(I) was mentioned in *State ex rel. Worthington Exempted School Dist. Bd. of Edn. v. Columbus City School Dist. Bd. of Edn.* (1961), 172 Ohio St. 237, 239, 15 O.O.2d 403, 175 N.E.2d 91, but the language at issue was not specifically construed. The text of what is now R.C. 3311.06(I) was also mentioned in *In re Margaretta Local School Dist.* (C.P.1969), 20 Ohio Misc. 243, 250, 49 O.O.2d 405, 253 N.E.2d 836. That case involved a dispute over the transfer of funds and has no relevance to the issue we address.

of little help. Black's Law Dictionary (8th Ed.2004) 1272 defines "pursuant to" as follows: "1. In compliance with; in accordance with; under * * *. 2. As authorized by; under * * *. 3. In carrying out * * *." The issue we consider goes to the statute's intended scope or reach, and the definitions do not aid in clarifying what the statute's intended scope or reach should be. We therefore must construe the statute within its context.

{¶ 24} The statute's context reveals no indication that the General Assembly meant to prevent residents such as appellees from resorting to R.C. 3311.24 in seeking the transfer of their property to another school district. Our reading of R.C. 3311.06(I) in its context indicates that its likely intent was to require that a *school district* attempting to facilitate a transfer of territory for school purposes in connection with an annexation must follow the procedures of R.C. 3311.06. We find no reason to believe that the statute was meant to address the situation of this case, involving a petition filed by "qualified electors" under R.C. 3311.24.

{¶ 25} Without a clearer expression that the legislature so intended, we decline to apply R.C. 3311.06(I) to forever bar residents of property that was once annexed for municipal purposes (perhaps in the very distant past) from invoking R.C. 3311.24's petition process for the transfer of the property to another school district.

{¶ 26} There are additional indications that R.C. 3311.06 and 3311.24 are meant to govern different situations and can operate independently of each other. Ohio Adm.Code 3301–89–01(A) provides that the rules of Chapter 3301–89 of the Administrative Code apply to requests for transfer under R.C. 3311.06 and petitions for transfer under R.C. 3311.24. Ohio Adm.Code 3301–89–02 provides general procedures that apply to a request for transfer under either of those statutes. Ohio Adm.Code 3301–89–02(A) recognizes three types of "initial requests" for property transfers: (1) a "school district" request for transfer under R.C. 3311.06 (Ohio Adm.Code 3301–89–02(A)(1)), (2) a "board of education" request for transfer of territory within its district to an adjoining school district under R.C. 3311.24 (Ohio Adm.Code 3301–89–02(A)(2)), and (3) a request for transfer by "person(s)" through a petition under R.C. 3311.24 (Ohio Adm.Code 3301–89–02(A)(3)). Significantly, the state board's own rules do not in any way indicate that a transfer under R.C. 3311.24 and Ohio Adm.Code 3301–89–02(A)(3) is foreclosed when the property involved has previously been annexed.

{¶ 27} Furthermore, as the residents point out, the state board has previously entertained at least one transfer petition filed by residents under R.C. 3311.24, even though the property at issue had previously been annexed. See, e.g., *Levey v. State Bd. of Edn.* (Feb. 28, 1995), Franklin App. No. 94APE08–1125, 1995 WL 89703, *5 (territory had been annexed to Ottawa Hills in 1978 and a transfer petition was filed in 1992). Although *Levey* did not involve any issue regarding

whether R.C. 3311.06 should have foreclosed consideration of the transfer petition, that case does indicate that the state board handled the transfer petition in the case sub judice the same as it has handled similar petitions in the past.

{¶ 28} In R.C. 3311.061, the General Assembly expressly stated the legislative intent underlying 1986 amendments to R.C. 3311.06. The first paragraph of R.C. 3311.061 recognizes that school district boundaries are a matter of great concern to the public, that state law has generated substantial uncertainty over the stability of school district boundaries, and that this uncertainty has been particularly stressful for families with school-age children and has hindered the ability of school officials to plan for the future. The first paragraph concludes that a fair and lasting solution "can best be achieved through a cooperative effort involving school district officials, board of education members, and legislators."

{¶ 29} The second paragraph of R.C. 3311.061 states that the intent of the 1986 amendments was "to provide a mechanism whereby urban area school officials and boards of education that are willing to work together to establish cooperative education programs for the benefit of the school children in their districts may, through a process of negotiation and compromise, jointly resolve some of the issues related to the treatment of school territory annexed for municipal purposes."

{¶ 30} CPSD argues that R.C. 3311.061 demonstrates a legislative intent that R.C. 3311.06 is to be the sole mechanism for transferring territory to a different school district following annexation and that the "cooperative effort" envisioned in R.C. 3311.061 would be frustrated if residents whose property has been annexed are permitted to petition for transfer under R.C. 3311.24. However, we agree with the court of appeals' observation that "[t]he petition process in R.C. 3311.24, which requires the participation of all affected school districts, does not interfere" with the intent expressed in R.C. 3311.061. 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 16.

{¶ 31} Finally, we reject CPSD's argument that *Smith v. Granville Twp. Bd. of Trustees* supports the proposition that R.C. 3311.06 is the exclusive method for transferring territory following annexation. The discussion in *Smith* cited by CPSD addressed whether a "board of county commissioners [should] consider the impact of schools" in deciding whether to approve an annexation petition pursuant to R.C. 709.033. See *Smith*, 81 Ohio St.3d at 616, 693 N.E.2d 219, and at paragraph two of the syllabus. This court answered that question in the negative by determining that the State Board of Education has exclusive authority over school-related issues that arise due to an annexation. Id. We did state in *Smith* that "R.C. 3311.06 provides a mechanism whereby a school district may petition to transfer territory between districts." Id. However, we did not consider whether R.C. 3311.06 might be *the exclusive method* for pursuing transfer of

school district property that has been annexed. CPSD's arguments assume too much.

{¶ 32} For all the foregoing reasons, we hold that R.C. 3311.06 does not prevent residents who seek to transfer property from one school district to another from pursuing the transfer under R.C. 3311.24 when the property was the subject of a prior annexation proceeding. We thus agree with the court of appeals' conclusion on this issue.

## III. THE MERITS OF THE TRANSFER REQUEST

{¶ 33} The second issue we address is whether the residents met their burden of establishing that the property transfer should have been granted. This issue implicates the statutory and Administrative Code provisions governing the state board's consideration of a transfer request, the standards governing a common pleas court's consideration of an administrative appeal under R.C. 119.12, and the standards governing appellate review of the common pleas court's decision. Most pointedly, we must resolve whether the common pleas court committed errors of law or abused its discretion in upholding the state board's denial of the transfer.

### A. Applicable Standards of Review

{¶ 34} We first delineate the well-established roles of a common pleas court and an appellate court in an R.C. 119.12 administrative appeal in this situation. A decision of the State Board of Education on an R.C. 3311.24 transfer request is appealable under R.C. 119.12. *Rossford Exempted Village School Dist. v. State Bd. of Edn.* (1989), 45 Ohio St.3d 356, 544 N.E.2d 651, syllabus. See also *Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 555 N.E.2d 931, syllabus (state board's denial of transfer under R.C. 3311.06 is appealable under R.C. 119.12).

{¶ 35} R.C. 119.12 provides the standard of review for the common pleas court:

{¶ 36} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

{¶ 37} Thus, R.C. 119.12 requires a reviewing common pleas court to conduct two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry. As to the first inquiry, "the common pleas court must give deference to the agency's resolution of evidentiary conflicts, but 'the findings of the agency are by no means conclusive.' * * * 'Where the court, in its appraisal of the evidence, determines

that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order.'" *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 470–471, 613 N.E.2d 591, quoting *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265. "We take this precedent to mean that an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc.*, 66 Ohio St.3d at 471, 613 N.E.2d 591; *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 81, 697 N.E.2d 655.

{¶ 38} As to the second, legal part of the common pleas court's inquiry, "An agency adjudication is like a trial, and while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own." *Ohio Historical Soc.*, 66 Ohio St.3d at 471, 613 N.E.2d 591; see *VFW Post 8586*, 83 Ohio St.3d at 82, 697 N.E.2d 655 (common pleas court exercises independent judgment as to purely legal questions).

{¶ 39} We have defined "reliable, probative, and substantial evidence": "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." (Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 40} We described an appellate court's standard of review in this situation in *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 590 N.E.2d 1240. There, we stated:

{¶ 41} "'In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion "implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685.

{¶ 42} " 'The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' " *Rossford Exempted Village School Dist.,* 63 Ohio St.3d at 707, 590 N.E.2d 1240, quoting *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264.

{¶ 43} An appellate court's scope of review on issues of law is plenary, including the issue of whether the common pleas court applied the proper standard of review. See *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835.

### B. Parameters of the State Board's Inquiry

{¶ 44} R.C. 3311.24 itself contains little guidance for the state board's consideration of a petition for a transfer under that statute, beyond stating that the state board "may, if it is advisable, provide for a hearing" and that the state board or its representatives "shall preside at any such hearing." R.C. 3311.24(A). The standards, factors, and procedures for the administrative consideration of such a petition are contained in Ohio Adm.Code Chapter 3301–89.[4]

{¶ 45} Ohio Adm.Code 3301–89–01 sets forth the general policies of the state board in a request for transfer of territory under R.C. 3311.06 or 3311.24, with Ohio Adm.Code 3301–89–01(F) stating that "[a] request for transfer of territory will be considered upon its merit with primary consideration given to the present and ultimate good of the pupils concerned."

{¶ 46} Ohio Adm.Code 3301–89–02 outlines the procedures for considering a transfer of territory under R.C. 3311.06 or 3311.24, including hearing and posthearing procedures. In particular, Ohio Adm.Code 3301–89–02(B) requires that when negotiations have failed to produce an agreement, each school district involved in a proposed transfer of territory must answer a number of specific questions to aid in evaluating the proposed transfer. The former version of Ohio Adm.Code 3301–89–02(B) in effect at the time of the hearing in this case provided 17 questions to be answered.[5] These questions included topics such as the reasons for the request, possible racial-isolation issues, adequacy of facilities,

---

4. For an extensive discussion of former provisions of Ohio Adm.Code Chapter 3301–89, which are similar in most respects to the Administrative Code provisions governing this case, see *Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 192–194, 555 N.E.2d 931.

5. The current version of Ohio Adm.Code 3301–89–02(B), effective February 27, 2007, provides 25 specific questions to be answered.

fiscal effects of a transfer, harm caused by previous transfers, whether a "tax grab" might be involved, distance to school buildings, and geographic issues.

{¶ 47} Ohio Adm.Code 3301–89–03 contains a nonexhaustive list of factors to be considered by the hearing officer. In addition to the school districts' answers to the questions in Ohio Adm.Code 3301–89–02(B), these factors include agreements entered into by public agencies or school districts, racial-isolation issues, geographic issues, and other potential effects on both districts. Ohio Adm.Code 3301–89–03(B).

{¶ 48} Ohio Adm.Code 3301–89–03(C) provides that when the evidence before the hearing officer "is in balance, the hearing officer may consider the preference of the residents with school-age children who live in the territory sought to be transferred to another school district. The school district preference of such residents with school-age children in the territory requested for transfer may only be considered and given weight when all other factors are equal."

{¶ 49} The hearing officer in this case considered several cases from the Tenth District Court of Appeals. In *Hicks ex rel. 528 Petitioners v. State Bd. of Edn.*, Franklin App. No. 02AP–1183, 2003-Ohio-4134, 2003 WL 21791276, ¶ 16, the Tenth District stated that the petitioner in a territorial transfer proceeding bears the burden of proof that the transfer should be approved. The *Hicks* court cited its decision in *Youngstown Sheet & Tube Co. v. Maynard* (1984), 22 Ohio App.3d 3, 8, 22 OBR 37, 488 N.E.2d 220, for the proposition that "it is generally held that, absent a statutory provision which specifically places the burden of proof, such burden in an administrative action is upon the party asserting the affirmative issue." See also *Levey*, 1995 WL 89703, at *5.

{¶ 50} "[T]he several factors for consideration set forth in Ohio Adm.Code 3301–89–02(B) and 3301–89–03(B) are intended to be an integral part of the board's transfer decision with primary consideration given to the present and ultimate good of all the students who are affected by the proposed transfer." *Garfield Hts. City School Dist. v. State Bd. of Edn.* (1990), 62 Ohio App.3d 308, 319, 575 N.E.2d 503.

{¶ 51} A change in school district boundaries affects more than just the students in the transferring area; it also affects the students remaining in the relinquishing district and those already in the receiving district. Consequently, it is appropriate for the state board "to consider both the social and educational needs of *all* affected students, as well as the potential financial implications of a transfer. When a transfer of school districts is proposed, a balancing must take place between many competing factors in order to achieve the desired result of achieving what is in the best interests of the students concerned." (Emphasis added.) Id. at 323, 575 N.E.2d 503. See also *Cincinnati City School Dist. v. State Bd. of Edn.* (1996), 113 Ohio App.3d 305, 310, 680 N.E.2d 1061 ("Because

the good of the pupils must be the primary consideration of the board, by definition no other single factor may be determinative of the transfer request").

{¶ 52} Because Ohio Adm.Code 3301–89–01(F) refers broadly to the "*ultimate good* of the pupils concerned" (emphasis added), it supports a wide-ranging inquiry that will necessarily differ from case to case. This inquiry is not limited to considering how present students are affected, but also extends to considering future students.

{¶ 53} The hearing officer cited multiple Ohio cases that have identified a number of factors that are probative of the "present and ultimate good of the pupils concerned," such as (1) the proximity of the property to the receiving school district, (2) greater access to extracurricular activities in the receiving district, (3) shorter traveling distance to school buildings in the receiving district, (4) a shorter bus ride to the school facilities in the receiving district, (5) the focus of families' social, business, and community life on the receiving district, (6) improvement of student safety through safer travel routes to the receiving district, (7) the degree to which the affected students' social and educational needs would be met by the receiving district, and (8) personal preference of the affected families.

## C. The State Board Denies the Transfer Request

{¶ 54} The hearing officer found, inter alia, the following facts: (1) the residents "live in an area where various school district boundaries, township boundaries, and municipal boundaries come together," (2) no public-school student lived in the transferring area, and the only private-school student who lived there had "a strong bond" to his high school, (3) the residents presented no evidence that the transfer would accrue to the ultimate good of any students who currently reside in the proposed transfer area, (4) the residents feel connected to Madeira and feel that their area should be in the MCSD based on geographical considerations, (5) one resident's desire for the transfer was a "question of the preference of the current homeowners" based on their connection with Madeira and on his belief that the fair market value of the homes would increase if the transfer was approved, (6) although MCSD is at or near capacity in the number of students it can accommodate and did not encourage a transfer, the transfer would not have any significant impact on MCSD, and (7) CPSD expects to lose approximately 600 students over the next three years, and monetary losses from prior transfers out of the district "exceed[ed] $18 million in assessed valuation"; thus, although CPSD is a large district, "prior transfers have caused substantial harm to the district," and any further transfers "would be detrimental to the fiscal or educational operation of the district."

{¶ 55} The hearing officer concluded that "only a few" of the school districts' answers to the 17 questions of former Ohio Adm.Code 3301–89–02(B) were applicable. The hearing officer deemed most of the applicable answers to be insignificant, stating that "because no students are involved in the proposed area of transfer, the only issue of significance is the loss to Cincinnati Public Schools of the assessed valuation of these four properties."[6]

{¶ 56} In reviewing the ten factors of Ohio Adm.Code 3301–89–03(B), the hearing officer found nine of the ten either inapplicable or insignificant. As to the remaining factor, which was not of particularly great import either, the hearing officer found that "[t]he school district territories will remain contiguous if the proposed transfer of territory is approved."

{¶ 57} Because the hearing officer's analysis is crucial to setting the stage for our scrutiny of the court of appeals' reasoning, we quote the most relevant part of the hearing officer's analysis in considerable detail:

{¶ 58} "The evidence and testimony presented show that there are no students in the proposed transfer area who attend Cincinnati Public Schools; all students residing in the proposed transfer area attend private schools and it is likely that they will continue to attend private school even if the transfer is granted. A transfer of the proposed transfer area from Cincinnati Public Schools to Madeira City Schools would result in a financial windfall to Madeira City Schools to the detriment of Cincinnati Public Schools. Madeira City Schools would acquire fiscal resources without assuming any educational responsibilities. With this in mind, the reality of the matter is that Cincinnati Public Schools face[s] the immediate loss of $373,840[7] each year in assessed valuation if the transfer is allowed. This transfer request, initiated by the homeowners in the proposed transfer area, appears to be an attempt to increase their property value by transferring to a more desirable school district.

{¶ 59} "Approving this transfer does not appear to be in the best interest of either district or their respective students. Consideration of the 'present and ultimate good of the pupils concerned' is not limited to the interests of those students in the transfer territory. Rather, the inquiry involves *all* students affected by the proposed transfer, including those remaining in the relinquishing district and those already at the receiving district. Thus, evidence that a transfer

---

6. The hearing officer also had before him a document submitted by CPSD along with its answers to the 17 questions entitled "Information Upon Which to Base Consideration of School Territory Transfer Following Annexation, Section 3311.24, O.R.C," but did not specifically cite that document in his report and recommendation.

7. The hearing officer noted in an earlier finding of fact that the value of the four properties totaled "$373,840 in assessed valuation" with "assessed valuation being 35% of market value."

may be in the best interests of the students in the transfer area must be balanced against evidence of the potential harm such a transfer may have on other students in the affected districts. Here, petitioners did not introduce any evidence regarding how this proposed transfer would benefit the students in the transfer territory. The students in the transfer territory attend private school and would therefore not benefit from the proposed transfer. As a result, any potential harm such transfer may have on the students in the relinquishing district must be carefully reviewed.

{¶ 60} "For Cincinnati Public Schools, the only evidence to rely on is their responses to the 17 questions outlined above. In particular, Cincinnati Public Schools is concerned that there are racial isolation implications and believes that loss of either pupil or valuation is detrimental to the fiscal or educational operation of its district. Furthermore, previous transfers have caused substantive harm to Cincinnati Public Schools. Because the one student in the proposed transfer area attends private school, the issue is not whether Madeira City Schools can provide a better education than Cincinnati Public Schools. The primary issue is whether the benefit to the students in the transfer area outweighs the harm to the other students in the affected district. Petitioners did not introduce any evidence regarding how this proposed transfer would benefit the students in the transfer territory and Madeira City Schools did not take part in the request. After a careful balancing of the factors involved, it is apparent that a greater harm is caused if the proposed transfer of territory is approved.

{¶ 61} "In light of the testimony of the various witnesses and the documentary evidence introduced at the hearing, petitioners have failed to present reliable, substantial and probative evidence in support of their request. Having failed to do so, petitioners' request for the transfer of the proposed territory should be denied." (Emphasis sic.)

{¶ 62} The state board accepted the hearing officer's recommendation and denied the transfer petition.

### D. The Common Pleas Court Affirms

{¶ 63} In its review, the common pleas court first rejected the residents' argument that the hearing officer failed to consider many of the factors relevant to the transfer, stating:

{¶ 64} "The tenor of the findings and conclusions establishes that the Hearing Officer considered all of the answers of the districts as well as the other factors to be considered. He also noted the history of cases considering transfer requests. He focused upon the impact not only as to those potential future students in the transfer area, but also the impact upon those in the existing districts.

{¶ 65} "* * * While [the residents] may contend that adequate weight was not given to the various factors to be considered, it would be improper for the Court to disregard the balance given to the evidence by the trier of fact without a substantial basis to do so. [The residents] could have provided evidence to dispute the figures and answers provided by [CPSD], but did not do so."

{¶ 66} Second, the common pleas court disagreed with the residents' assertion that the hearing officer relied upon improper evidence. The court noted that administrative proceedings involve relaxed standards of evidence, with the credibility of, and weight to be given to, hearsay evidence to be assessed by the hearing officer. The court determined that any evidence of questionable value was not so important to the hearing officer's recommendation as to constitute reversible error.

{¶ 67} In concluding that the board's order should be affirmed as supported by reliable, probative, and substantial evidence, the common pleas court stated:

{¶ 68} "The Hearing Officer concluded that in balancing the interests, he would not recommend the transfer. He noted that there are presently no students, Madeira Schools are at or near capacity while [CPSD] has been losing students, and finally, [the residents] offered no evidence that the transfer would benefit students in the area. While evidence of geography as to roads to the nearest schools and proximity was offered, this evidence did not appear to shift the balance in favor of the [residents]. The Board considered the findings and conclusion of the Hearing Officer and came to the same conclusion. The record gives support to the Board's decision. When reviewed to determine reliable, probative, and substantial evidence, the evidence of record offers such support. As mentioned above, the windfall to Madeira would not be significant, nor likewise would the loss to [CPSD]. Nevertheless, it is still one of the considerations used in the balancing test."

### E. The Court of Appeals Reverses

{¶ 69} In reversing, the court of appeals first identified two "key findings" made by the hearing officer: (1) that the residents presented no evidence of the impact on students in the transferring area, i.e. (in the words of the court of appeals), that "no students in the transferring area attended public school, [and therefore] there was no evidence in favor of the transfer," and (2) that there was no evidence in favor of the transfer, and the only significant evidence against it concerned its financial impact on CPSD, which the hearing officer characterized as "detrimental." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 28–30. The court of appeals proceeded to consider these "key findings" in reverse order.

{¶ 70} The court of appeals agreed that the effects of lost pupils and lost valuation on fiscal or educational operation are appropriate considerations under

Ohio Adm.Code 3301–89–02(B)(9) and Tenth District precedent. The court held, however, that the hearing officer's findings of detriment were inconsistent with *Crowe v. State Bd. of Edn.* (Oct. 26, 1999), Franklin App. No. 99–AP–78, 1999 WL 969708, because CPSD offered no evidence to show how much money the transferring district would lose, and the hearing officer made no finding as to how the loss of income would affect CPSD. 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 32–34.

{¶ 71} The court of appeals stated that under *Crowe,* the "simple assertion that CPSD will lose valuation is insufficient to show what the loss of funds would be or that the loss would be detrimental to the fiscal or educational operation of the district. Therefore, as to any financial impact upon CPSD, the trial court erred in finding that the board's order was supported by reliable, probative, and substantial evidence." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 34.

{¶ 72} The court of appeals further stated: "The hearing officer's factual finding that '[i]t is clear that prior transfers have caused substantial harm to the district' is equally unsupported." Id. at ¶ 35. The court of appeals noted that the accuracy of CPSD's statistics on loss of students and tax revenue was disputed and that CPSD had presented no evidence to support the statistics. Id. at ¶ 36. The court declared: "Regardless of whether the figures concerning the size of previous transfers were accurate, there was no evidence before the hearing officer to support a finding that the transfers 'caused substantial harm.' Thus, the trial court erred in concluding that the board's decision, in this respect, was supported by reliable, probative, and substantial evidence." Id. at ¶ 38.

{¶ 73} The court of appeals then stated that "[t]his lack of evidence concerning financial impact upon CPSD was deliberate." Id., 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 39. CPSD's counsel asserted at the hearing that CPSD would not present any evidence or testimony because the residents would be unable to meet their burden of showing the ultimate good of the students "since none are at risk currently." Id. The court of appeals observed that it was reasonable for the hearing officer to conclude that the only student living in the transfer area would probably not attend MCSD even if the transfer was granted, but found that "this factual finding did not reasonably lead to the legal conclusion that [the residents] had presented no evidence in favor of the transfer." Id. at ¶ 45.

{¶ 74} The court rejected the notion that "evidence showing that the one school-age student who could be affected by a transfer currently attends private school and is likely to continue to attend private school precludes further consideration of other evidence favoring the transfer." The court then reviewed Tenth District cases to make the apparent point that other transfers involving few or no school-age students had been pursued and approved in the past. Id. at ¶ 46–49.

{¶ 75} In concluding this part of its analysis, the court of appeals declared: "Based on this court's prior decisions, we similarly reject, and find that the trial court abused its discretion by not rejecting, the hearing officer's legal conclusion that since only one school-age student lived within the transfer area and that student attended private school, [the residents] had presented no evidence in favor of the proposed transfer. Instead, the hearing officer should have examined all the evidence presented and then weighed the competing factors to determine whether a transfer was appropriate." Id., 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, at ¶ 50.

{¶ 76} The court of appeals then considered whether there was any evidence to support the board's order. After reiterating the lack of evidence of either a detrimental impact on CPSD's fiscal or education operation or substantial harm to CPSD caused by previous transfers, the court of appeals found that other factors were not significant, including racial isolation. The court concluded that no reliable, probative, and substantial evidence supported the state board's order and that the trial court had abused its discretion in affirming the denial of the transfer. Id. at ¶ 52.

{¶ 77} The court of appeals then considered whether the residents had "met their burden of proving entitlement to the transfer." Id. at ¶ 53. The court stated, "[W]e need look only to the hearing officer's own findings of fact to find evidence supporting the transfer. Specifically, four homeowners testified concerning their isolation from CPSD, their separation from the city of Madeira for certain purposes, including voting, their geographic connection to the city of Madeira, and the positive impact a transfer would have on their community spirit and pride. We note, too, as the trial court noted, that [the residents] also presented evidence of geography as to roads to the nearest schools and their proximity to the transfer area. This evidence is representative of evidence supporting transfer in many other cases. * * * Thus, in the face of no evidence supporting a denial of the transfer, we conclude that [the residents] presented evidence to support the transfer and met their burden of proving entitlement to the transfer." Id., 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440.

## F. Analysis

{¶ 78} Both CPSD and the state board assert that the residents had the burden of proving that the transfer would further "the present and ultimate good of the students concerned" under Ohio Adm.Code 3301–89–01(F), that the residents failed to meet that burden, and that they did not present evidence that the transfer would produce educational benefits to students. CPSD and the state board further argue that the court of appeals erroneously shifted the burden of proof to CPSD and improperly gave primacy to noneducational considerations.

{¶ 79} The residents do not dispute that they bore the burden of proof in seeking a territory transfer. They contend, however, that CPSD presented no evidence to support the denial of the transfer, while they presented sufficient evidence under the applicable Administrative Code provisions to support the transfer. Thus, the residents argue, the court of appeals properly determined that the transfer should have been approved.

{¶ 80} Although we agree with much of the appellate court's analysis, we do not accept several of its most important conclusions. In particular, our review of the entire record convinces us that the court of common pleas did not abuse its discretion or commit errors of law in affirming the order of the state board. The entire record, including the specific factors both in favor of and against the transfer, supports the trial court's view of this case over the Tenth District's view. For the following reasons, we reverse the judgment of the court of appeals.

{¶ 81} One of the most noteworthy features of this case is that there was little compelling evidence either in favor of or against the transfer. Most of the factors for consideration set forth by the relevant Administrative Code provisions were either irrelevant or of very little relevance to the overall inquiry. The hearing officer therefore had to resort to considering secondary factors in conducting the balancing test required by the Administrative Code and by established precedents. The cases relied on by the court of appeals are distinguishable from this case because they involved more compelling reasons in favor of or against a transfer. For example, in *Crowe*, the receiving district strongly *supported* the transfer request, and the hearing officer had recommended that the transfer be approved. See 1999 WL 969708, at *1. Furthermore, although *Crowe* might be similar in some respects to this case, each transfer must be decided on its own particular facts under the required wide-ranging balancing test.

{¶ 82} We first disagree with the court of appeals' initial legal conclusions that there was no evidence of a detrimental impact on CPSD's fiscal or education operation or of harm to CPSD caused by previous transfers. Although the specific evidence on these points was controverted, the hearing officer was within his authority when he concluded that the transfer would undoubtedly affect CPSD detrimentally in some way and that past transfers had undoubtedly caused at least some harm to CPSD.

{¶ 83} The hearing officer was not required to ignore these concerns, as the court of appeals seemed to hold. Rather, the hearing officer was justified in allowing these factors to play at least some role in the overall balancing test as to whether the transfer should be approved. We agree with the trial court's observation that "the windfall to [MCSD] would not be significant, nor likewise would the loss to [CPSD]. Nevertheless, it is still one of the considerations used in the balancing test." CPSD's lack of specific evidence quantifying the harm

caused by previous transfers need not prevent the hearing officer from considering harm as a factor.

{¶ 84} Evidence of such limited probative value on clearly secondary factors will not often play an important role in the Administrative Code's balancing test. But when, as in this case, neither side presents much in the way of probative evidence, less important factors such as these are valid considerations. The weight to be given to such factors necessarily depends on the full context of the situation. Thus, the court of appeals erred when it rejected the trial court's conclusion that the state board's order as to financial impact upon CPSD and harm caused by prior transfers was supported by reliable, probative, and substantial evidence. At least some degree of reliable, probative, and substantial evidence supported the state board's order, and we disagree with the court of appeals' conclusion to the contrary.

{¶ 85} Given our conclusion that the hearing officer could validly consider these factors against the transfer, we next consider the evidence presented by the residents. Just as the evidence against the transfer was not particularly compelling, the evidence in its favor was also less than forceful.

{¶ 86} In supplying the overall standard for considering school district territory transfer requests, the Administrative Code focuses on educational impact as the key to whether such requests should be approved. "[P]rimary consideration" is to be given to "the present and ultimate good of the pupils concerned." Ohio Adm.Code 3301–89–01(F). Pursuant to Ohio Adm.Code 3301–89–03(C), the school district preference of residents with school-age children who live in the transferring territory may be considered and given weight only "when all other factors are equal." This provision reinforces the policy that personal preferences are of very limited import in the consideration of transfer requests.

{¶ 87} In light of these principles, we agree with CPSD and the state board that the court of appeals improperly gave primacy to noneducational considerations. We further agree that when this case is viewed under the appropriate standard of appellate review set forth in Rossford Exempted Village School Dist., 63 Ohio St.3d at 707, 590 N.E.2d 1240, the residents failed to sustain their burden of proof that the transfer should be approved.

{¶ 88} Moreover, we specifically disagree with the court of appeals' paraphrase of an important part of the hearing officer's reasoning. The court stated that "in essence," the hearing officer concluded that "because no students in the transferring area attended public school, there was no evidence in favor of the transfer." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 28. Relying on this erroneous characterization, the court of appeals held that the trial court abused its discretion by not rejecting this "legal conclusion" and that "the hearing officer should have examined all the evidence presented and then weighed the competing factors to determine whether a transfer was appropriate." Id. at ¶ 50.

{¶ 89} The hearing officer's actual statement was that the residents "did not introduce any evidence regarding how this proposed transfer would benefit the students in the transfer territory." We regard this statement as essentially accurate. Viewed in the context of the full record, this statement was meant only as a narrow reference to the specific point regarding the current existence of only one school-aged student and not as a broad statement that the hearing officer was declining to consider any of the evidence offered by the residents in support of the transfer. We do not agree with the court of appeals' view that the hearing officer failed to consider all the evidence or to weigh competing factors, and we share the trial court's concern that the hearing officer's balancing of the factors should be treated with deference.

{¶ 90} Having concluded as a matter of law that there was evidence to support the state board's order and that the hearing officer weighed all the evidence presented in reaching his recommendation, we therefore determine that the trial court correctly ruled that the state board's order was "in accordance with law" and that the court of appeals erred in reversing that ruling. We now consider whether the trial court abused its discretion in affirming the order of the state board.

{¶ 91} Most of the evidence offered by the residents, as focused on by the court of appeals, involved the personal preferences of the residents, including "their isolation from CPSD, their separation from the city of Madeira for certain purposes, including voting, their geographic connection to the city of Madeira, and the positive impact a transfer would have on their community spirit and pride." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 53. However, as we discussed above, the Administrative Code focuses on educational concerns as the heart of the inquiry. Personal preferences are subordinate concerns that carry little weight overall. Because this case does not involve the tie-breaker situation contemplated by Ohio Adm.Code 3301–89–03(C), these issues arguably carry no weight at all when they are expressed as personal preferences rather than educational concerns.

{¶ 92} We acknowledge that the residents also presented some additional evidence that did go to more relevant questions, such as "evidence of geography as to roads to the nearest schools and their proximity to the transfer area." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 53. The trial court also noted this evidence, but stated that it "did not appear to shift the balance in favor of" the residents. Our review of this evidence shows not only that its value is open to question, but that it is not of great significance. We accept the trial court's statement.

{¶ 93} Other factors within the record that played a role in the hearing officer's analysis were MCSD's lack of interest in encouraging the transfer request,

MCSD's near-capacity enrollment, CPSD's anticipated loss of students, and certain testimony indicating that the residents may have been motivated by a desire to increase property values.

{¶ 94} On this record, where much of the evidence and factors for consideration offered by each side are questionable, inconsequential, and in dispute, we believe that the trial court in its R.C. 119.12 review would have been justified in either affirming or reversing the order of the state board. The trial court affirmed the order. Thus, when we consider this case in light of the appropriate and highly deferential abuse-of-discretion standard of review, the evidence offered in favor of the transfer by the residents is not sufficient to establish that the trial court abused its discretion in determining that the state board's order was supported by reliable, probative, and substantial evidence. It is not the role of an appellate court in this situation to reweigh the evidence.

{¶ 95} Finally, CPSD and the state board both argue that the court of appeals' decision in this case has negative public-policy implications and that it will, if allowed to stand, encourage other residents to seek territory transfers for reasons other than educational concerns, thus undermining the stability of school district boundaries. We observe that whether a particular transfer request should be approved is a matter entrusted in the first instance to the state board, to be decided on its specific merits, and that the standards of review in the common pleas court and the court of appeals are meant to ensure proper deference to the state board.

{¶ 96} Based on the foregoing analysis, we determine that the common pleas court did not abuse its discretion or make errors of law in ruling that the state board's order to deny the transfer was supported by reliable, probative, and substantial evidence and was in accordance with law. We therefore reverse the judgment of the court of appeals.

## IV. CONCLUSION

{¶ 97} In conclusion, we concur with the court of appeals' holding that R.C. 3311.06 does not bar the residents from pursuing a transfer of territory under R.C. 3311.24 merely because the property at issue had previously been annexed into Madeira. But we reverse the judgment of the court of appeals on the merits and reinstate the ruling of the court of common pleas upholding the state board's order.

Judgment reversed.

MOYER, C.J., and LUNDBERG STRATTON, J., concur.

LANZINGER, J., concurs in syllabus and judgment only.

PFEIFER, O'DONNELL, and CUPP, JJ., dissent.

**LANZINGER, J., concurring in syllabus and judgment only.**

{¶ 98} In my view, this case boils down simply to the fact that the Madeira city residents failed to carry their burden to show that their properties should be transferred from the Cincinnati to the Madeira school district. The State Board of Education properly denied the transfer because of the lack of sufficient evidence, and the trial court properly affirmed that order. I join in the judgment solely because the court of appeals substituted its judgment for that of the trial court on issues of fact. I also concur in the syllabus because R.C. 3311.06 does not prevent the residents from pursuing a transfer of property under R.C. 3311.24.

---

**CUPP, J., dissenting.**

{¶ 99} The difference in the outcome of this case between the opinion of the court of appeals and the opinion of the majority of this court hinges on whether the responses by the Cincinnati Public School District ("CPSD") to the questions posed at Ohio Adm.Code 3301–89–02(B)(9) and (10) amount, without further facts and explanation, to reliable, probative, and substantial evidence. The court of appeals held that the responses do not; a majority of this court holds that they do.

{¶ 100} In considering the scant record in this case, I confess to being mystified why neither party sought to introduce evidence comparing the academic achievements of the two school districts. It would seem that such a comparison, easily obtained from the State Department of Education's own district report cards, might have at least some value in determining the primary consideration in transfer cases, which is "the present and ultimate good of the pupils concerned."[8] Ohio Adm.Code 3301–89–01(F).

{¶ 101} I find that while the responses of CPSD are part of the record, the bare statements do not provide reliable, probative, and substantial evidence upon which the state board could properly base its decision. As the court of appeals explained:

{¶ 102} "While the hearing officer concluded that 'any transfer would be detrimental to the fiscal or educational operation of the district,' there was no

---

8. In apparent recognition of this issue's relevance, the February 2007 revisions to Ohio Adm.Code 3301–89–02(B) added a new question: "What designation did each of the affected districts and building receive on their state report cards for the last five years?" Ohio Adm.Code 3301–89–02(B)(22).

evidence, and the hearing officer made no finding, as to how the loss of income would affect CPSD. Instead, the hearing officer relied on CPSD's answers concerning the assessed valuation of the transferring property and its unsupported 'Yes' to the question whether the loss of 'either pupils or valuation' would 'be detrimental to the fiscal or educational operation of the relinquishing school district.' Under *Crowe* [*v. State Bd. of Edn.* (Oct. 26, 1999), Franklin App. No. 99AP–78, 1999 WL 969708], this simple assertion that CPSD will lose valuation is insufficient to show what the loss of funds would be or that the loss would be detrimental to the fiscal or educational operation of the district. Therefore, as to any financial impact upon CPSD, the trial court erred in finding that the board's order was supported by reliable, probative, and substantial evidence." 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440, ¶ 34.

{¶ 103} Moreover, I am not convinced that CPSD's past loss of territory and revenue from other transfers of territory has any legal relevance to the petition for transfer under consideration in this case. The issue, it would seem, is what impact *this* transfer would have upon both school districts and "the present and ultimate good of the pupils concerned" and not what impact *other* transfers might have had on the districts and on the pupils affected by *those* transfers.

{¶ 104} The court of appeals was also correct that the petitioners, in fact, did present evidence of the benefit that would accrue to pupils, whether present or future, who reside or may come to reside on the property if it was transferred to the Madeira school district. As stated by the appellate court:

{¶ 105} "[W]e need look only to the hearing officer's own findings of fact to find evidence supporting the transfer. Specifically, four homeowners testified concerning their isolation from CPSD, their separation from the city of Madeira for certain purposes, including voting, their geographic connection to the city of Madeira, and the positive impact a transfer would have on their community spirit and pride. We note, too, as the trial court noted, that appellants also presented evidence of geography as to roads to the nearest schools and their proximity to the transfer area. This evidence is representative of evidence supporting transfer in many other cases. [Citations omitted.] Thus, in the face of no evidence supporting a denial of the transfer, we conclude that appellants presented evidence to support the transfer and met their burden of proving entitlement to the transfer." Id. at ¶ 53.

{¶ 106} The majority opinion, in my view, finds the existence of reliable, probative, and substantial evidence where none exists to support the decision of the trial court in affirming the decision of the state board. Consequently, I dissent from the judgment reversing the court of appeals, although I join the

majority in approving the court of appeals holding that R.C. 3311.06 does not bar the residents from pursuing a transfer of territory under R.C. 3311.24.

PFEIFER and O'DONNELL, JJ., concur in the foregoing opinion.

———————————

Manley Burke, Timothy M. Burke, and Emily T. Supinger, for appellees.

David C. DiMuzio, Inc., David C. DiMuzio, and Jennifer B. Antaki, for appellant Cincinnati School District Board of Education.

Nancy Hardin Rogers, Attorney General, William P. Marshall, Solicitor General, Stephen P. Carney, Deputy Solicitor, Todd R. Marti, Assistant Solicitor, and Reid T. Caryer, Assistant Attorney General, for appellant State Board of Education.

Scott, Scriven & Wahoff, L.L.P., Gregory B. Scott, and Jennifer I. Stiff, urging reversal for amicus curiae Ohio School Boards Association.