KENNEDY, d.b.a. Kennedy's Broadway Billiards, Appellant,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellee.

[Cite as *Kennedy v. Ohio Liquor Control Comm.*, 184 Ohio App.3d 392, 2009-Ohio-4971.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–114.

Decided Sept. 22, 2009.

Kenneth D. Myers, for appellant.

Richard Cordray, Attorney General, and Scott A. Longo, Assistant Attorney General, for appellee.

Sadler, Judge.

{¶ 1} Appellant, James M. Kennedy, d.b.a. Kennedy's Broadway Billiards, filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas affirming a finding by appellee, the Ohio Liquor Control Commis-

sion, that appellant violated certain liquor-law provisions. For the reasons that follow, we affirm.

{¶ 2} Appellant was charged with a violation of Ohio Adm.Code 4301:1–1–53 for allowing public gaming on permit premises. Specifically, the alleged violation involved holding a Texas Hold 'Em poker tournament. Players were not required to buy chips in order to play in the tournament, and no money changed hands. Players amassing the most chips were awarded various prizes.

{¶ 3} Before the commission, appellant argued that because players were not required to buy chips and no money changed hands, the activity did not constitute a prohibited game of chance. The commission found that appellant had committed the violation and ordered that appellant's liquor permit be suspended for five days or, in the alternative, that appellant pay a $500 forfeiture.

{¶ 4} Appellant filed an appeal with the Franklin County Court of Common Pleas, arguing that the commission's order was not supported by reliable, probative, and substantial evidence, and was otherwise not in accordance with law. The trial court concluded that poker is a game of chance, regardless of whether the players give anything of value to participate, and affirmed the commission's order. Appellant then filed this appeal, alleging a single assignment of error:

The trial court erred by upholding the Commission's finding that the permit-holder violated the law.

{¶ 5} Pursuant to R.C. 119.12, a court of common pleas reviewing the decision of an administrative agency may affirm the agency's order if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence, and is otherwise in accordance with law. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096. This requires the common pleas court to engage in a two-step process. The first involves a hybrid factual/legal inquiry in which the court defers to the agency's resolution of evidentiary conflicts and factual findings, unless the court concludes that the agency's findings are internally inconsistent, impeached by evidence in the record, rest upon improper inferences or are otherwise unsupportable. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 613 N.E.2d 591. The second step requires the court of common pleas to construe and apply the law. *Id.*

{¶ 6} An appellate court's review of a trial court's determination regarding an administrative order is more limited, being confined to a consideration of whether the trial court abused its discretion in making that determination. *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio

St.3d 191, 489 N.E.2d 288. However, the appellate court's review of issues of law is plenary. *Bartchy*, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

{¶ 7} In this case, resolution turns on the issue whether Texas Hold 'Em poker, when played with chips that do not have to be purchased by the player, and when no money otherwise changes hands, constitutes a game of chance. R.C. 2915.01(D) provides that a game of chance is "poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo."

{¶ 8} The commission determined, and the court of common pleas agreed, that under the statutory definition, poker is per se a game of chance, regardless of whether the players give anything of value in order to play. Appellant argues to the contrary that in order to constitute a game of chance, the players must always give something of value.

{¶ 9} The Supreme Court of Ohio has addressed the issue whether video poker games constitute a "game of chance" as defined in R.C. 2915.01(D), and has held that they do. *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 697 N.E.2d 655. The permit holder in that case argued that no evidence had been offered that the video poker machines in question had been played by any players giving value in the hope of receiving gain. However, the court held that there was no requirement that separate evidence regarding giving anything of value be offered because poker is per se a game of chance, and the additional showing that value has been given "is required only for games not specifically labeled as games of chance in R.C. 2915.01(D)." Id. at 83, 697 N.E.2d 655.

{¶ 10} Appellant argues that *VFW Post 8586* is distinguishable from this case because in *VFW Post 8586* there was no question that value had been given by the persons who played the video poker games in question. However, this argument overlooks the quoted language from *VFW Post 8586*. The court made it clear that whether value had been given by the players was irrelevant, because the statute specifically labels poker as a game of chance.[1]

{¶ 11} Based on *VFW Post 8586*, we must conclude that the poker game conducted here constituted a "game of chance," notwithstanding that the players were not required to buy chips in order to play, and no money changed hands, because R.C. 2915.01(D) specifically identifies poker as a game of chance. Any change to the law regarding poker games under these circumstances must

---

1. We note, as did the trial court, that Ohio Adm.Code 4301:1–1–53 has been amended to define "anything of value" to include situations in which games of chance are played without charge. However, that amendment occurred after the date of the alleged violation in this case, and therefore has no applicability to the charge in this case.

necessarily come either from the General Assembly revising the definition of "game of chance" or from the Supreme Court of Ohio revisiting its interpretation of the current statutory language.

{¶ 12} Thus, the trial court did not err in affirming the commission's order. Therefore, we overrule appellant's assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

FRENCH, P.J., concurs.

MCGRATH, J., dissents.

MCGRATH, Judge, dissenting.

{¶ 13} Because I am unable to agree with the majority decision, I respectfully dissent.

{¶ 14} The majority relies on *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 697 N.E.2d 655, but I believe that that case is distinguishable from the matter herein. Concededly, the Supreme Court of Ohio in *VFW Post 8586* states, "[b]ecause poker is *per se* a 'game of chance' within the meaning of R.C. 2915.01(D), and because it was stipulated that the machines in question play poker, the department was not required to produce separate evidence regarding a player's giving of value in hope of gain." Id. at 83, 697 N.E.2d 655. However, just prior to that statement, the Supreme Court notes that "R.C. 2915.01(D) recognizes that its enumerated games * * * *involve a player giving something of value in the hope of gain.*" (Emphasis added.) Id. at 82, 697 N.E.2d 655. There is undisputed evidence in the case sub judice that there is nothing of value given by the players. The idea that *VFW Post 8586* is distinguishable is further reinforced by footnote 2, in which the Supreme Court specifically notes that *VFW Post 8586* "did not attempt to introduce evidence that in any essential respect differentiates the game being played on the video machines from poker *as it commonly understood to be played.*" (Emphasis added.) Here, it is undisputed the players give nothing of value to play, and, thus, there is undisputed evidence that differentiates the game being played here from "poker" as it is commonly understood to be played. I believe that this distinction is critical and is one that the Supreme Court did not encounter when it reviewed *VFW Post 8586* because in that case it was undisputed that players had to pay money in order to play the video poker machine.

{¶ 15} Based on the foregoing, I find the facts before us distinguishable from those set forth in *VFW Post 8586* and would, therefore, reverse the judgment of the trial court and remand the matter to the commission for a new decision. One

can call something a "game of chance," but if in fact there is no chance being taken, it is not a "game of chance."