[Cite as *Hargrave v. Ohio Bur. of Motor Vehicles*, 2018-Ohio-513.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JOCELYN D. HARGRAVE SITTA-BOMBERI | : | |
| | : | |
| | : | Appellate Case No. 27667 |
| *Plaintiff-Appellant* | : | |
| | : | Trial Court Case No. 2016-CV-6072 |
| v. | : | |
| | : | (Civil Appeal from |
| OHIO BUREAU OF MOTOR VEHICLES | : | Common Pleas Court) |
| | : | |
| *Defendant-Appellee* | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of February, 2018.

. . . . . . . . . . .

CHERYL R. WASHINGTON, Atty. Reg. No. 0038012, 10 West Second Street, Suite 2225, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

TRISTA M. TURLEY, Atty. Reg. No. 0093939, Assistant Attorney General, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Plaintiff-Appellant, Jocelyn Hargrave Sitta-Bomberi ("Hargrave") appeals from a judgment affirming an amended final adjudication order of Defendant-Appellee, Ohio Department of Public Safety, Bureau of Motor Vehicles ("BMV"), which imposed security and non-compliance suspensions of Hargrave's driver's license. Hargrave contends that the trial court abused its discretion in affirming the amended final adjudication order, because the order was not supported by reliable, probative, and substantial evidence.

{¶ 2} We conclude that the trial court did not abuse its discretion in affirming the BMV's adjudication order, as the court's decision was supported by sound reasoning and was neither arbitrary nor unconscionable. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} On July 20, 2016, the BMV sent Hargrave notices of noncompliance and security suspensions of her driving privileges that would be effective August 19, 2016. The suspensions were based on the fact that Hargrave's 1999 Dodge Durango had been involved in an automobile accident on March 20, 2016. The BMV asked Hargrave to provide proof that the vehicle was insured at the time of the accident and to provide an $11,803.29 security deposit. Hargrave requested a hearing, which was held before a Hearing Examiner for the Ohio Department of Public Safety on September 28, 2016. At the hearing, the BMV presented evidence from Nicole Kelly and Nicholas Brown, who occupied the other car involved in the accident. The BMV also presented testimony from

a BMV employee, who identified and discussed BMV records pertaining to the case.

{¶ 4} At the hearing, the parties stipulated to the authenticity of State's Ex. A, which consisted of 41 pages of BMV records, including Hargrave's BMV record of violations and suspensions. In addition, Hargrave testified on her own behalf.

{¶ 5} The evidence at the hearing disclosed the following facts. At around 12:30 or 1:00 a.m. on March 20, 2016, Nicole Kelly was driving a 2007 Chevy Malibu south on Smithville Avenue in Dayton, Ohio. Kelly and a friend, Nicholas Brown, were returning from a movie and were headed to Brown's house so she could drop him off. As they proceeded through a green light, their car was t-boned by a Dodge Durango. Kelly could not recall anything after seeing the Durango's lights. The next thing Kelly recalled was waking up in the hospital. She was hospitalized for four days as a result of the accident.

{¶ 6} Brown also indicated that as their car went through a green light, it was t-boned by a Dodge Durango, which was going over 45 miles per hour. The Durango hit the Malibu in the driver's side. After the Malibu was hit, it spun and flipped, and ended up on the opposite side of the intersection. The Durango ended up a bit past Kelly's car and was backed up to a small section of woods. Brown did not see who was in the Durango, but a witness stated that he saw two women running from the Durango.

{¶ 7} Hargrave admitted that she owned the Durango involved in the accident, and that the vehicle was not insured on March 20, 2016. According to Hargrave, Nationwide had insured the vehicle, but cancelled the policy on February 19, 2016, because her husband had refused to sign a document stating that he did not drive the car and was not living in her home. At the time, Hargrave and her husband were in the process of getting a divorce.

**{¶ 8}** Hargrave testified that she did not drive her vehicle after the insurance was cancelled. Instead, she relied on her brother and sister for transportation. Hargrave further stated that an acquaintance, Tonya Pope, had stayed overnight at her house on March 19, 2016. Hargrave had known Pope for a few years, and Pope occasionally came to her house. That night, Pope had asked Hargrave for permission to drive her car. However, Hargrave refused, and told Pope that her brother would take Pope to the store in the morning.

**{¶ 9}** Hargrave went to bed, and got up at around 4:00 or 5:00 a.m. to use the restroom. At that point, she noticed that her car keys were missing from the table where she normally kept the keys. When Hargrave realized the car had been stolen, she called the police and reported the theft. She testified that she was not aware at the time that her car had been involved in an accident.

**{¶ 10}** Between 6:00 and 8:00 a.m. on March 20, 2016, two policemen came to Hargrave's house, and she learned that the Durango had been involved in an accident. Hargrave gave the police information about the theft, but the police refused to give her a report; instead, she was told that she had to meet with a detective. The next day (March 21, 2016), Hargrave met with Detective Brown of the Dayton Police Department and gave him a written statement. The police told her that no police report (presumably regarding the theft) had been made, because the car had been involved in an accident.

**{¶ 11}** Hargrave did not present any evidence at the hearing to substantiate her account. She did not submit a copy of the written statement she allegedly gave to the detective, and did not call any witnesses. On October 28, 2016, the Hearing Examiner issued a report concluding that Hargrave had failed to show evidence of financial

responsibility and had also failed to submit evidence to substantiate that a termination of the noncompliance suspension was justified under R.C. 4509.101(L)(1). In addition, the Hearing Examiner found that Hargrave failed to establish any exceptions to the requirement of providing security sufficient to satisfy a judgment under R.C. 4509.12. Accordingly, the Hearing Examiner recommended that noncompliance and security suspensions be put in place.

{¶ 12} Because Hargrave failed to file timely objections, the BMV Registrar issued a final adjudication order on November 16, 2016, adopting the Hearing Examiner's report and recommendations. However, since Hargrave filed objections on November 14, 2016, the Registrar elected to consider the objections, even though they were untimely. The registrar then filed an amended final adjudication order on November 16, 2016, rejecting Hargrave's objections and adopting the Hearing Examiner's recommendations.

{¶ 13} Hargrave appealed from the BMV order on November 30, 2016, and obtained a stay of the suspensions pending appeal. After briefs and the administrative record were filed, the trial court filed a decision on June 26, 2107, affirming the Registrar's amended final adjudication order. Hargrave timely appealed from the judgment of the trial court.

## II. Alleged Abuse of Discretion

{¶ 14} Hargrave's sole assignment of error states that:

The Common Pleas Court Abused Its Discretion in Affirming the Amended Adjudication Order, as It Was Not Supported by Reliable, Probative, and Substantial Evidence.

{¶ 15} Under this assignment of error, Hargrave contends that the trial court abused its discretion by affirming the BMV's adjudication order. Hargrave's first point is that the security suspension was improper because she did not give permission for use of her car, and she, therefore, fit within a suspension exception found in R.C. 4509.19(A)(3). The trial court rejected this argument, noting that the Hearing Examiner did not find Hargrave credible. According to Hargrave, this finding was an abuse of discretion, because no evidence was presented to challenge her testimony.

{¶ 16} "Where the Registrar of Motor Vehicles determines, as to a motor vehicle operated by anyone other than the owner but with his permission, express or implied, and involved in an accident causing injury or damage to the person or property of anyone other than the owner or driver, that the owner has no form of insurance or bond covering any liability of his for such damage, the registrar is authorized by Section 4509.12, Revised Code, to determine the amount of security sufficient to satisfy any judgment for damages as may be recovered against the owner, provided that the owner is not otherwise specifically excepted from the security requirement by Section 4509.19, Revised Code." *City of Toledo v. Bernoir*, 18 Ohio St.2d 94, 95, 247 N.E.2d 740 (1969), paragraph one of the syllabus.

{¶ 17} In the case before us, the alleged exception to the security requirement is contained in R.C. 4509.19(A)(3), which states that:

(A) The requirements as to security and suspension in sections 4509.12 and 4509.17 of the Revised Code do not apply:

* * *

(3) To the owner of a motor vehicle if at the time of the accident the

motor vehicle was operated without his permission, express or implied, or was parked by a person who had been operating such motor vehicle without such permission * * *.

{¶ 18} As was noted, the trial court rejected Hargrave's claim that her vehicle was operated without her permission. The standard of review for agency decisions is found in R.C. 119.12, which "requires a reviewing common pleas court to conduct two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry. As to the first inquiry, 'the common pleas court must give deference to the agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." * * * "Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order." ' " *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, ¶ 37, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470-471, 613 N.E.2d 591 (1993). (Other citation omitted.)

{¶ 19} Appellate courts have a more limited power of review. While trial courts examine the evidence, the only decision for appellate courts is whether the trial court abused its discretion. (Citation omitted.) *Lorain City School Dist. Bd. of Educ. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61, 533 N.E.2d 264 (1988). *Accord Bartchy* at ¶ 41.

{¶ 20} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597

(1990). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.*

{¶ 21} In the case before us, the trial court reviewed the evidence, but deferred to the credibility determination of the Hearing Examiner, who "had to weigh that evidence [the testimony] based on the first-hand questioning of the witnesses." Doc. #18, Decision, Order and Entry Affirming the Registrar's Amended Final Adjudication Order, p. 6. The trial court commented that it was removed from the first-hand questioning of witnesses and could not second-guess the Hearing Examiner's judgment of credibility. The court, thus, found substantial, reliable, and probative evidence in the record to support the BMV's decision.

{¶ 22} After considering the entire record, we find no abuse of discretion. The trial court's decision was supported by sound reasoning and was neither arbitrary nor unconscionable. Notably, a fact-finder was not required to find Hargrave credible, simply because Hargrave claimed that she did not give Pope permission to use her car. A fact-finder " 'may believe or disbelieve any witness or accept part of what a witness says and reject the rest.' " *McKay Mach. Co. v. Rodman*, 11 Ohio St. 2d 77, 82, 228 N.E.2d 304 (1967), quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). *Accord State v. Clark*, 2d Dist. Montgomery No. 27365, 2017-Ohio-7633, ¶ 19.

{¶ 23} Furthermore, absent evidence to the contrary, the BMV is allowed to "reasonably presume that the driver of a motor vehicle is driving it with the owner's permission." *Bernoir*, 18 Ohio St.2d at 95, 247 N.E.2d 740, paragraph two of the syllabus. In the case before us, Hargrave did present her own unsupported contrary testimony, but the fact-finder did not believe her. As a result, the hearing examiner was

entitled to reasonably presume that the car was being driven with Hargrave's permission.

{¶ 24} Hargrave contends that no evidence was available other than her own testimony, because the individual who allegedly took the car (Pope) had a motive not to provide testimony. However, the record indicates that Hargrave made no attempt to subpoena Pope to testify.

{¶ 25} R.C. 119.09 states that an agency conducting an adjudication hearing "may, and upon the request of any party receiving notice of the hearing * * * *shall* issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers, directed to the sheriff of the county where such witness resides or is found, which shall be served and returned in the same manner as a subpoena in a criminal case is served and returned." (Emphasis added.) Consequently, Hargrave was entitled to ask the BMV to subpoena witnesses or documents that she needed for her defense.

{¶ 26} At the hearing, Hargrave stated that she had been unable to verify Pope's presence at the YMCA, where Pope allegedly lived, because the YMCA refused to provide information about its residents. However, according to Pope, the YMCA also told her that she could send paperwork to the YMCA and if Pope were there, she would get it. Doc. #11, Tab 9, BMV Hearing Transcript, p. 40. As a result, nothing prevented Hargrave from attempting to subpoena Pope at the YMCA address. She failed, however, to ask the BMV to do so.

{¶ 27} In addition, Hargrave could have asked the agency to subpoena the police officers to whom she spoke about the alleged theft of her car. Hargrave also could have asked the agency to subpoena a copy of the written statement she allegedly gave to the

police. Again, she failed to do so. Hargrave, therefore, failed to establish that she was exempt from providing a security deposit under R.C. 4509.19(A)(3) because her vehicle had been used without her permission. The trial court, therefore, did not abuse its discretion by upholding the security suspension of Hargrave's driver's license.

{¶ 28} Hargrave's second argument relates to the noncompliance suspension that was imposed pursuant to R.C. 4509.101(A). According to Hargrave, this suspension should have been terminated under R.C. 4509.101(L)(1)(b)(iii), because a person other than Hargrave was responsible for the lapse of proof of financial responsibility. Hargrave also relies on R.C. 4509.101(L)(1)(b)(iv), which allows noncompliance suspensions to be terminated based on excusable neglect.

{¶ 29} R.C. 4509.101(A)(1) provides that "[n]o person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to that driver's operation of that vehicle." If a vehicle is involved in an accident that requires the filing of a police report, the owner of the vehicle must show proof of financial responsibility. R.C. 4509.101(A)(3)(a). Failure to maintain proof of financial responsibility results in a mandatory license suspension under R.C. 4509.101(A)(2).

{¶ 30} R.C. 4509.101(L) contains exceptions to the suspension required by R.C. 4509.101(A). R.C. 4509.101(L) states, in pertinent part, as follows:

(1) The registrar may terminate any suspension imposed under this section and not require the owner to comply with divisions (A)(5)(a), (b), and (c) of this section if the registrar with or without a hearing determines that

the owner of the vehicle has established by clear and convincing evidence that *all* of the following apply:

(a) The owner customarily maintains proof of financial responsibility.

(b) Proof of financial responsibility was not in effect for the vehicle on the date in question for one of the following reasons:

* * *

(iii) A person other than the vehicle owner or driver was at fault for the lapse of proof of financial responsibility through no fault of the owner or driver.

(iv) The lapse of proof of financial responsibility was caused by excusable neglect under circumstances that are not likely to recur and do not suggest a purpose to evade the requirements of this chapter.

(Emphasis added.)

{¶ 31} The Hearing Examiner concluded that, other than submitting the cancellation notice, Hargrave failed to provide evidence that termination of the noncompliance suspension was warranted by any exceptions in R.C. 4509.101(L)(1). Doc. #11, Tab 8, October 28, 2016 Report and Recommendation, p. 2. The trial court agreed, noting that Hargrave failed to provide any evidence besides her own self-serving testimony to show that she consistently maintained financial responsibility for the Durango.

{¶ 32} Hargrave contends that the trial court abused its discretion because she offered proof that she had insurance at the time of the administrative hearing. She also stresses that she attempted to obtain insurance while her divorce was pending, but was

thwarted by her husband's refusal to sign paperwork. In addition, Hargrove argues that the lapse was excusable because it occurred under circumstances that were not likely to reoccur.

{¶ 33} After considering the record, we conclude that the trial court's decision was supported by sound reasoning and was neither arbitrary nor unconscionable. Notably, in addition to establishing that one of the excuses listed in R.C. 4509.101(L)(1)(b)(i)-(iv) applies, an owner must also prove, by clear and convincing evidence, that she customarily maintained proof of financial responsibility. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 34} Hargrave submitted no evidence at the hearing, other than the cancellation notice for her Nationwide policy, to establish that she customarily maintained proof of financial responsibility. However, the cancellation notice was sent within the first 90 days of the policy, meaning that the policy had only been in effect for a short time. *See* Doc. #11, Tab 9, Hargrave Ex. 1.

{¶ 35} Hargrave did not provide the BMV with any evidence that she customarily maintained proof of financial responsibility for her vehicle. She could have attempted to satisfy this burden by submitting proof of insurance that was in effect prior to the beginning date of the Nationwide policy. However, she failed to do so. If such evidence existed, it would have been available to Hargrave, either from her own records or by subpoenaing

records of her insurer. Moreover, at the administrative hearing, the BMV presented evidence of several prior noncompliance suspensions that had been imposed on Hargrave's driving privileges. *See* Doc. #11, Tab 9, State's Ex. A., pp. 35-41. A reasonable inference from the evidence is that Hargrove failed to customarily maintain proof of financial responsibility for her vehicle.

**{¶ 36}** Accordingly, the trial court did not abuse its discretion by concluding that Hargrave failed to establish an exception to the suspension requirement in R.C. 4509.101(A).

**{¶ 37}** Based on the preceding discussion, Hargrave's sole assignment of error is overruled.

## III.   Conclusion

**{¶ 38}** Hargrave's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Cheryl R. Washington
Trista M. Turley

Hon. Timothy N. O'Connell