[Cite as *Vandalia-Butler City School Dist. Bd. of Edn. v. Ohio Dept. of Edn.*, 2024-Ohio-742.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Vandalia-Butler City School District
Board of Education, :

        Appellant-Appellant, : No. 23AP-474
(C.P.C. No. 22CV-9106)

v. :

                               (ACCELERATED CALENDAR)

Ohio Department of Education et al., :

        Appellees-Appellees. :

D E C I S I O N

Rendered on February 29, 2024

**On brief**: *Frost Brown Todd LLP*, and *Alexander L. Ewing*, and *Jonathan E. Roach*, for appellant. **Argued**: *Jonathan E. Roach*.

**On brief**: *Dave Yost*, Attorney General, and *Erin F. Kelly*, for appellee, Ohio Department of Education. **Argued**: *Erin F. Kelly*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Vandalia-Butler City School District Board of Education ("Vandalia-Butler SD"), appellant, appeals from the judgment of the Franklin County Court of Common Pleas, in which the trial court affirmed the December 13, 2022 resolution passed by the Ohio State Board of Education ("State Board")[1] granting the petition filed by Ryan and Rochelle Bednarczuk ("Petitioners") to transfer certain property they own from the Vandalia-Butler SD to Tipp City Exempted Village Schools ("Tipp City SD"). For the reasons that follow, we affirm.

---

[1] The State Board is part of the Ohio Department of Education ("ODE"), appellee in this matter. R.C. 3301.13.

{¶ 2} Petitioners currently reside in Tipp City SD and their three children attend school there. Petitioners purchased 40 undeveloped acres (the "Property"), located in Vandalia-Butler SD, with the intention of building a home and a barn on the Property. The Property is contiguous to Tipp City SD and is bordered on the north by a residential subdivision, Deer Cliff Run. Deer Cliff Run is located in Tipp City SD. Further, the Property can only be accessed through Deer Cliff Run. Because Petitioners want their children to continue to attend school in Tipp City SD, on March 18, 2020, pursuant to R.C. 3311.24, they submitted a petition to the State Board to transfer the Property from Vandalia-Butler SD to Tipp City SD. In accordance with R.C. 3311.24(A)(2), the petition was forwarded to ODE.

{¶ 3} Thereafter, pursuant to Ohio Adm.Code 3301-89-02(D), ODE requested that Vandalia-Butler SD and Tipp City SD each submit answers to a District Information Form for Requesting Territory Transfer, and a 25 Questions form. Both school districts responded.

{¶ 4} On May 12, 2020, ODE issued a notice of opportunity for hearing. On June 1, 2020, Petitioners requested a hearing, and on June 8, 2020, Vandalia-Butler SD requested a hearing.

{¶ 5} On September 25, 2020, a hearing on the matter was held before a hearing officer for the State Board. Petitioners, Vandalia-Butler SD, and Tipp City SD appeared at the hearing. During the hearing, testimony was received from Petitioners and representatives of Vandalia-Butler SD, and extensive evidence was admitted by Petitioners, Vandalia-Butler SD, Tipp City SD, and ODE. Petitioners were in favor of the transfer; Vandalia-Butler SD was not in favor of the transfer. ODE took no official position on the matter.

{¶ 6} On December 29, 2020, the hearing officer issued a report and recommendation, recommending the transfer request be granted and the petition approved. Most pertinently, the hearing officer stated:

> If the transfer is approved, then any school age children living on the [P]roperty would attend the same school as the other school age children in the subdivision. If the transfer is not approved, then any school age children living on the [P]roperty

would attend a different school. [Vandalia-Butler SD] has not shown a sufficiently good reason to subject future school age children who might live on the property to that detriment by requiring them to remain in the [Vandalia-Butler SD]. [Vandalia-Butler SD]'s apprehension about a possible exodus from the district is not adequate to overcome approval of the transfer under these specific facts.

(Dec. 29, 2020 Hearing Officer's Report & Recommendation at 12.)

{¶ 7} On April 13, 2021, the State Board issued a resolution adopting the recommendation of the hearing officer and approving Petitioners' request for transfer of territory from Vandalia-Butler SD to Tipp City SD. The resolution was certified on April 15, 2021.

{¶ 8} On May 21, 2021, Vandalia-Butler SD timely appealed the State Board's resolution approving the transfer of territory to the trial court in case No. 21CV-3277. The trial court remanded the matter to the State Board for further investigation and clarification regarding the location of the Property. (Jan. 18, 2022 Decision & Final Jgmt. Entry Vacating Apr. 15, 2021 Resolution of the Ohio State Bd. of Edn. & Remanding for a New Hearing at 5.) Upon remand, on September 23, 2022, the parties submitted a joint stipulation of facts to the hearing officer clarifying both the location of and access to the Property and requested the hearing officer issue his supplemental report and recommendation based on the then-current record and the joint stipulation.

{¶ 9} On November 2, 2022, the hearing officer issued a Supplemental Report and Recommendation ("Supp. R&R"), which adopted the initial report and recommendation that the transfer request be granted and the petition approved, and supplemented the findings of fact to include the joint stipulations. Vandalia-Butler SD objected to the Supplemental R&R.

{¶ 10} On December 13, 2022, the State Board again issued a resolution adopting the recommendation of the hearing officer and approving Petitioners' request for transfer of territory from Vandalia-Butler SD to Tipp City SD.

{¶ 11} Vandalia-Butler SD again appealed the State Board's action approving the transfer of territory requested by Petitioners to the trial court. On July 5, 2023, the trial

court issued its decision and judgment entry, in which it affirmed the December 13, 2022 resolution of the State Board granting Petitioners' request to transfer the territory. (July 5, 2023 Decision & Jgmt. Entry Affirming the December 13, 2022 Resolution of the Ohio State Board of Education & Notice of Final Appealable Order.)

{¶ 12} Vandalia-Butler SD now timely appeals, asserting the following two assignments of error:

> [I.] The trial court erred as a matter of law in finding that there is evidence of an educational impact supporting this transfer.
>
> [II.] The trial court abused its discretion in finding that the Board's decision was supported by a preponderance of reliable, probative, and substantial evidence.

{¶ 13} Pursuant to R.C. 3301.13, the State Board is placed within the ODE and makes it "subject to Chapter 119[] of the Revised Code" relating to the administrative appeal process. Thus, a decision of the State Board on an R.C. 3311.24 transfer request is appealable under R.C. 119.12. *See, e.g., Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 45 Ohio St.3d 356, 544 (1989), syllabus.

{¶ 14} In a R.C. 119.12 administrative appeal, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.
>
> (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.
>
> (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). In applying its standard of review, a trial court must "give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio

St.2d 108, 111 (1980). "[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993). Although the trial court must defer to an agency's findings of fact, it must construe the law on its own. *Id.*

{¶ 15} By contrast, on appeal to this court, the standard of review is more limited. While the trial court must examine the evidence, "[s]uch is not the charge of the appellate court." *Bd. of Edn. of Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). In reviewing the trial court's determination of whether the State Board's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the trial court abused its discretion. *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (1992).

{¶ 16} A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 35. The term abuse of discretion, " 'commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis omitted.) *Id.*, quoting *Black's Law Dictionary* 11 (2d Ed.1910). Absent an abuse of discretion, " '[a]ppellate courts must not substitute their judgment for those of an administrative agency or a trial court.' " *Rossford Exempted Village School Dist.* at 707, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). Thus, the fact that we might have arrived at a different conclusion than did the State Board is immaterial. *Id.* Nevertheless, "[a]n appellate court's scope of review on issues of law is plenary, including the issue of whether the common pleas court applied the proper standard of review." *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 43, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992) ("it is the prerogative and the responsibility

of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder.").

{¶ 17} "R.C. 3311.24 itself contains little guidance for the state board's consideration of a petition for a transfer [of school district territory] under that statute, "but more specific "standards, factors, and procedures for the administrative consideration of such a petition are contained in Ohio Adm.Code Chapter 3301-89." *Bartchy* at ¶ 44. Ohio Adm.Code 3301-89-01 sets forth the State Board's general policies regarding transfers of territory and provides, at subsection (F), that "[a] request for transfer of territory shall be considered upon its merit with primary consideration given to the present and ultimate good of the pupils in the affected districts." Ohio Adm.Code 3301-89-02(D) outlines procedures for considering a petition for transfer of territory and sets forth 25 questions that each school district implicated by a requested transfer must answer to aid the State Board in its consideration. Those questions are:

> (1) Why is the request being made?
>
> (2) Are there racial isolation implications?
>
> (a) What is the percentage of minority students in the relinquishing district?
>
> (b) What is the percentage of minority students in the acquiring district?
>
> (c) If approved, would the transfer result in an increase in the percentage of minority pupils in the relinquishing district?
>
> (3) What long-range educational planning for the students in the districts affected has taken place?
>
> (4) Will the acquiring district have the fiscal and human resources to efficiently operate an expanded educational program?
>
> (5) Will the acquiring district have adequate facilities to accommodate the additional enrollment?
>
> (6) Will both the districts involved have pupil population and property valuation sufficient to maintain high school centers?

(7) Will the proposed transfer of territory contribute to good district organization for the acquiring district?

(8) Does the acquiring district have the capacity to assume any financial obligation that might accompany the relinquished territory?

(9) Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?

(10) Have previous transfers caused substantive harm to the relinquishing district?

(11) Is the property wealth in the affected area such that the motivation for the request could be considered a mechanism for the receiving school district to receive additional real estate tax revenue?

(12) Are there any school buildings in the area proposed for transfer? If so, was the school building constructed within the last five years?

(13) What are the distances between the school buildings within:

(a) The present school district?

(b) The proposed school district?

(14) What are the distances between:

(a) The area proposed for transfer and each building in the present school district?

(b) The area proposed for transfer and each building in the proposed school district?

(15) If approved, will the requested transfer create a school district with noncontiguous territory?

(16) Is the area being requested an isolated segment of the district of which it is a part?

(17) Will the municipal and school district boundary lines become coterminous?

(18) For each district affected:

(a) What is the inside millage?

(b) What is the outside operating millage?

(c) What is the bonded indebtedness millage?

(19) What is the levy history in each of the affected districts?

(20) Will the transfer of school district territory cause a negative impact on the state of Ohio?

(21) How will the projected revenues and expenditures as set forth in the most recent five-year forecasts be impacted by the transfer, if implemented? Each district shall provide the department of education with copies of their most recent five-year forecasts.

(22) What designation did each of the affected districts and building receive on their state report cards for the last five years?

(23) How will the proposed transfer affect the educational offerings/programs of the affected districts?

(24) What course offerings will be available through the acquiring district, as compared to the relinquishing district?

(25) How will the proposed transfer affect the athletic programs and extracurricular activities of the affected districts? Will similar programs and activities be available to students of the affected districts?

{¶ 18} Ohio Adm.Code 3301-89-03(B) contains a non-exhaustive list of other factors to be considered:

(1) Documented agreements made by public agencies involved in municipal annexation proceedings should be honored;

(2) A previous agreement entered into by the school districts concerned should be honored unless all concerned districts agree to amend it;

(3) The statement signed by the school district boards of education after negotiations as required by paragraph (D)(4) of Rule 3301-89-04 of the Administrative Code;

(4) There should not be undue delay in requesting a transfer for school purposes after a territory has been annexed for municipal purposes;

(5) The transfer shall not cause, preserve, or increase racial isolation;

(6) All school district territories should be contiguous unless otherwise authorized by law;

(7) School district boundary lines that have existed for a long period of time should not be changed if substantial upheaval results because of long-held loyalties by the parties involved;

(8) The pupil loss of the relinquishing district should not be such that the educational program of that district is severely impaired;

(9) The fiscal resources acquired should be commensurate with the educational responsibilities assumed;

(10) The educational facilities of districts should be effectively utilized; and

(11) The preference of the residents with school-age children who live in the territory sought to be transferred to another school district shall be considered if evidence establishing that preference is admitted, provided the articulated reasons are not contrary to existing statutes or rules.

{¶ 19} "In supplying the overall standard for considering school district territory transfer requests, the Administrative Code focuses on educational impact as the key to whether such requests should be approved." *Bartchy* at ¶ 86. " '[T]he several factors for

consideration set forth in Ohio Adm.Code 3301-89-02[(D)][2] and 3301-89-03(B) are intended to be an integral part of the board's transfer decision with primary consideration given to the present and ultimate good of all the students who are affected by the proposed transfer.' " *Id.* at ¶ 50, quoting *Garfield Hts. City School Dist. v. State Bd. of Edn.*, 62 Ohio App.3d 308, 319 (1990). The good of the pupils must be the primary consideration of the State Board. *Id.* at ¶ 51, citing *Cincinnati City School Dist. v. State Bd. of Edn.*, 113 Ohio App.3d 305, 310 (1996). Each transfer request is decided on its own particular facts under the required balancing test. *Id.* at ¶ 81. Thus, " '[w]hen a transfer of school districts is proposed, a balancing must take place between many competing factors in order to achieve the desired result of achieving what is in the best interests of the students concerned.' " *Id.* at ¶ 51, quoting *Garfield Hts.* at 323. The weight to be given to those factors "necessarily depends on the full context of the situation." *Id.* at ¶ 84. The hearing officer's balancing of the factors should be treated with deference. *Id.* at ¶ 89.

**{¶ 20}** In its first assignment of error, Vandalia-Butler SD asserts that the trial court erred as a matter of law in finding that there is evidence of an educational impact supporting this transfer. We find this assignment of error meritless.

**{¶ 21}** In support of this assignment of error, Vandalia-Butler SD first argues that the trial court erroneously found "that the presence of a developed subdivision to the north [of the Property] is an 'educational' factor supporting the transfer." (Brief of Appellant at 8-9.) This argument simultaneously mischaracterizes the trial court's statements relating to the location of the Property and utterly misstates the standard for considering school district territory transfer requests.

**{¶ 22}** First, regarding the trial court's statements pertaining to the location of the Property, nowhere in its decision does the trial court declare or even intimate that it found that the location of the Property, standing alone, to be evidence of educational impact. Instead, it is clear from the trial court's decision that it was simply and correctly acknowledging that both the hearing officer and the State Board properly considered the location of the Property as part of its balancing of the myriad factors required to be

---

[2] At the time the decision in *Bartchy* was issued, the 25 questions to be answered by the school districts implicated in the transfer request were set forth in Ohio Adm.Code 3301-89-02(B).

considered when determining the educational impact of the proposed transfer on the students who would be living at the Property. For example, the trial court noted under "Facts" that the record showed "[t]he Property is contiguous to the Tipp City school district and abuts the Deer Cliff Run Subdivision, which is located in the Tipp City district. Tipp City schools are a shorter travel distance from the Property." (July 5, 2023 Decision & Jgmt. Entry Affirming the Dec. 13, 2022 Resolution of the Ohio State Bd. of Edn. & Notice of Final Appealable Order at 2.) The trial court further set forth the hearing officer's statement in his initial report and recommendation "that there was a legitimate concern that the Property should be in the same school district as the neighboring subdivision." *Id*. at 2-3. Under "Arguments on Appeal," the trial court further pointed out the hearing officer's statement "that the issue was whether Petitioners' 'concern for their special needs child' and the proximity of the Property to the Deer Cliff Run subdivision outweighed [Vandalia-Butler SD's] concerns about the transfer." *Id*. at 5. Similarly, the trial court noted the hearing officer's observation "that the Property could be reached only by traveling through the Deer Cliff Run subdivision" and that "the schools in Tipp City were closer to the Property." *Id*. Thus, on the face of the trial court's decision, it is evident the trial court did not find the location of the Property, standing alone, to be evidence of educational impact.

{¶ 23} Second, regarding Vandalia-Butler SD's misstatement of the standard for considering school district territory transfer requests, as previously discussed, " '[w]hen a transfer of school districts is proposed, a *balancing* must take place between *many competing factors* in order to achieve the desired result of achieving what is in the best interests of the students concerned.' " (Emphasis added.) *Bartchy* at ¶ 51, quoting *Garfield Hts.* at 323. The weight to be given to those factors "necessarily depends on the full context of the situation." *Id*. at ¶ 84. Vandalia-Butler SD's insistence that there are specific educational factors or educational impact factors that always must take precedence over non-educational factors—such as the location of the territory sought to be transferred—is simply not supportable by the foregoing authorities. Rather, both the Ohio Administrative Code and the established legal precedent governing the standard for considering school district territory transfer requests make clear that *all* of the competing factors must be considered and balanced, " 'with primary consideration given to the present and ultimate

good of all the students who are affected by the proposed transfer.' " *Id.* at ¶ 50, quoting *Garfield Hts.* at 319.

{¶ 24} Moreover, the consideration of the location of the Property by both the hearing officer and the State Board was both proper and mandated by the applicable law. Most notably, amongst the 25 questions set forth in Ohio Adm.Code 3301-89-02(D) to be utilized by the State Board in considering a transfer of territory request are numbers (14), (15), and (16), which specifically relate to the location of the territory proposed to be transferred in relation to both school districts involved. Furthermore, the list of other factors to be considered, delineated under Ohio Adm.Code 3301-89-03(B), is specifically noted to be non-exhaustive, to wit: "[o]ther factors that a hearing officer shall consider in hearing any request for a transfer of territory for school purposes include, but are not necessarily limited to * * *." In other words, a hearing officer is free to consider any additional factors integral to the determination of whether a requested transfer of territory should be granted. Thus, the hearing officer's and the State Board's consideration of the location of the Property—including its proximity to the Deer Cliff Run subdivision, its proximity to the schools in Tipp City SD, and the fact that it can only be accessed via the Deer Cliff Run subdivision—was entirely appropriate.

{¶ 25} Vandalia-Butler SD also contends in support of its first assignment of error that there is a "lack of evidence supporting the hearing officer's key conclusion (i.e., that the Property's location in relation to the Deer Cliff Run subdivision justifies the transfer)" and that the trial court "erred as a matter of law in finding that evidence of an 'educational impact' supports the transfer." (Brief of Appellant at 14-15.) As with its argument relating to the trial court's statements pertaining to the location of the Property discussed above, this contention again mischaracterizes the trial court's statements on the point and again misconstrues the standard for considering school district territory transfer requests. We therefore reject this contention, as well.

{¶ 26} We have already set forth the trial court's statements regarding the evidence concerning the Property's location in relation to the Deer Cliff Run subdivision above and will not repeat ourselves. We have also already thoroughly discussed the proper standard for considering school district territory transfer requests, which requires a balancing test of

"many competing factors in order to achieve the desired result of achieving what is in the best interests of the students concerned." (Citation omitted.) *Bartchy* at ¶ 51. At its core, under its first assignment of error, Vandalia-Butler SD is attempting to have this court reweigh and balance all the factors to be considered. As set forth above, this is not the standard of review for this court. In short, it was entirely within the purview of the hearing officer and, ultimately, the State Board to decide "that there was a legitimate concern that the Property should be in the same school district as the neighboring subdivision" and that "the transfer achieves the 'present and ultimate good' of the students in both districts." (July 5, 2023 Decision & Jgmt. Entry Affirming the Dec. 13, 2022 Resolution of the Ohio State Bd. of Edn. & Notice of Final Appelable Order at 2-3, citing Dec. 29, 2020 Report & Recommendation.) The trial court correctly deferred to the State Board on these issues.

{¶ 27} Accordingly, for the foregoing reasons, we overrule appellant's first assignment of error.

{¶ 28} In its second assignment of error, appellant argues that the trial court abused its discretion in finding that the State Board's decision was supported by a preponderance of reliable, probative, and substantial evidence. We disagree.

{¶ 29} In support of this assignment of error, Vandalia-Butler SD first argues that because there is no evidence showing how or when the Property will be developed, the hearing officer's conclusion that the Property should be placed in the same school district as the Deer Cliff Run subdivision is fundamentally flawed as being based on speculation. Vandalia-Butler SD points out that even Petitioners conceded at the hearing that the Property could ultimately be subdivided into its own residential neighborhood. Yet, this possibility is much more speculative than the evidence relied upon by the hearing officer in concluding that the Property should be in the same school district as that of the immediately adjacent Deer Cliff Run subdivision. Specifically, the evidence shows Petitioners have three elementary school age children, all of whom currently attend school in Tipp City SD. They purchased the Property with the intention of building a home and a barn on the Property. They want their children to continue to attend Tipp City SD schools. All this evidence was undisputed, and the hearing officer was entirely free to believe the testimony of Petitioners on these points as the factfinder.

{¶ 30} Furthermore, after the remand from the first appeal to the Franklin County Court of Common Pleas, the parties jointly stipulated to three key facts: that the Deer Cliff Run subdivision directly abuts the north line of the Property and access to the Property; that the Property is not located within the Deer Cliff Run subdivision; and that the only public access to the Property is through the Deer Cliff Run subdivision.

{¶ 31} Thus, taken together, the evidence showing the intent of Petitioners to reside on the Property with their children (which includes both their testimony as well as their Petition and supporting documents) and the location of the Property in relation to the Deer Cliff Run subdivision is reliable, probative, and substantial evidence fully supporting the hearing officer's conclusion that the Property should be in the same school district as that of the Deer Cliff Run subdivision. That Vandalia-Butler SD disagrees with this conclusion does not make it unsupported by reliable, probative, and substantial evidence.

{¶ 32} Vandalia-Butler SD also argues that there is no evidence, let alone reliable, probative, and substantial evidence, submitted showing the educational impact that the requested transfer would have on pupils at the Property, and therefore, this court must look to secondary considerations. Specifically, Vandalia-Butler SD argues that its evidence of the loss of annual tax revenue, were the transfer request to be granted, should have been more fully considered, and indeed, that it should have been dispositive. We reject this position.

{¶ 33} The record clearly shows that the hearing officer did fully consider the loss of annual tax revenue to Vandalia-Butler SD should the transfer request be granted. The hearing officer specified in his findings of fact that "[t]he annual real property tax on the unimproved property, currently paid to [Vandalia-Butler SD], is $3,236.17." (Nov. 2, 2022 Hearing Officer's Supp. Report & Recommendation Following Remand at 5.) The hearing officer ultimately concluded, however, that "there is little present detriment [to Vandalia-Butler SD's tax revenue], only the loss of a small annual tax on the unimproved property." *Id*. at 12. Again, that Vandalia-Butler SD disagrees with the hearing officer's conclusion (and, ultimately, that of the State Board) does not make it unsupported by reliable, probative, and substantial evidence.

{¶ 34} In short, by way of its arguments under this second assignment of error, as it did by way of its first, Vandalia-Butler SD is effectively asking this court to reweigh the evidence, rebalance the factors, and substitute its judgment for that of the State Board. But it is for the hearing officer and, ultimately, the State Board, not this court, to weigh these facts and arguments and determine what will serve the present and ultimate good of the pupils concerned. *See Garfield Hts.* at 323. We find no error here, when the hearing officer acknowledged evidence on both sides of the issues but decided that one party's evidence deserved more weight.

{¶ 35} Accordingly, based on our above discussion, we find the trial court did not abuse its discretion when it found the State Board's order was supported by reliable, probative, and substantial evidence. Appellant's second assignment of error is overruled.

{¶ 36} Therefore, for all the foregoing reasons, we overrule appellant's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

_____